**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **ERIC GARCIA,** | § | |
| **Petitioner,** | § | |
| | § | |
| **vs.** | § | **C.A. NO.  C-12-256** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Department of Criminal** | § | |
| **Justice, Correctional Institutions** | § | |
| **Division,** | § | |
| **Respondent.** | § | |

**MEMORANDUM AND RECOMMENDATION**

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the Beto 1 Unit in Tennessee Colony, Texas.  The actions about which he complains occurred in Nueces County, Texas.  Proceeding *pro se* and *in forma pauperis*, petitioner filed this petition pursuant to 28 U.S.C. §§ 2241 and 2254 on August 1, 2012 (D.E. 1).[1]  The underlying conviction which is the subject of the petition is a 2009 Nueces County conviction for one count of aggravated assault with a deadly weapon.  Petitioner claims that there was insufficient evidence to support a conviction and that his constitutional rights were violated during the trial proceedings.

On October 22, 2012 respondent filed a motion for summary judgment to which petitioner responded on November 2, 2012 (D.E. 13, 14).  Petitioner also filed a motion

---

[1] Petitioner stated under penalty of perjury that he placed his petition in the prison mail system on August 1, 2012 and it is considered filed as of that date.   See Spotville v. Cain, 149 F.3d 374, 376 (5th Cir. 1998).

for an evidentiary hearing (D.E. 15).  As discussed more fully below, it is respectfully recommended that respondent's motion for summary judgment be granted, that petitioner's motion for an evidentiary hearing be denied and that petitioner's cause of action for habeas corpus relief be denied.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331.  Petitioner was convicted in Nueces County, Texas.  28 U.S.C. § 2241(d); Wadsworth v. Johnson, 235 F.3d 959, 961 (5th Cir. 2000).

## BACKGROUND

On January 23, 2009 three men appeared in Darryl Rodriguez's back yard and assaulted him.  The men were wearing sweaters with hoods and all three had bandanas over their faces (4 R.R. 138-139; D.E. 10-13 at 31-32).[2]  The men were armed and one of them hit Rodriguez with a gun (4 R.R. 140; D.E. 10-13 at 33).  Rodriguez fell to the ground and as the men kicked him and pointed a gun at him he told them they could have whatever they wanted.  They told him to go inside (4 R.R. 140-141; D.E. 10-13 at 33-34).  Martin Ramos, a friend who was staying with Rodriguez, came out of the garage and the bandits directed him and Rodriguez inside at gunpoint (4 R.R. 115, 118-120, 141; D.E. 10-13 at 8, 11-13, 34).

---

[2]"R.R." refers to the Reporter's Record in this case.  All of the state court records are located at D.E. 10.

Once inside the kitchen, Rodriguez opened a kitchen cabinet door to retrieve some money and one of the intruders turned his back, giving Rodriguez an opportunity to grab a gun that was beside the money in the cabinet.  Rodriguez and the men exchanged gunfire and Rodriguez ran into the hall.  One of the men grabbed Rodriguez in a choke hold and tried to put a gun to his head, but Rodriguez shot back over his left shoulder and the man ran out of the house.  Rodriguez retrieved another gun and returned to the kitchen, where he shot another intruder several times  (4 R.R. 141-144; D.E. 10-13 at 34-37).

Rodriguez's wife, Elizabeth, testified that she had put her children to bed and was in the living room when she heard a fight.  She looked up and saw a man with a black bandana covering his face.  She ran to her bedroom and a few seconds later a man wearing a bandana and holding a gun told her to lay on the floor and she did.  She saw the man touch some of the things on her dresser and later discovered that her wedding ring was missing (4 R.R. 130-131; D.E. 10-13 at 23-24).  The ring was later found in a maroon Lincoln Continental parked in front of the house (4 R.R. 51, 132-133; D.E. 10-12 at 56, D.E. 10-13 at 25-26).

When police arrived they found one deceased man outside Rodriguez's house next to the Lincoln Continental (4 R.R. 35-36; D.E. 10-12 at 40-41).  Another man was treated for injuries at the scene (4 R.R. 97-98; D.E. 10-12 at 102-103).  Police also found a trail of blood leading down the street and around the corner (4 R.R. 39-40; D.E. 10-12 at 44-45).  In addition, police found a bloody handgun in a trash can on the street, a black

bandana and a ball cap (4 R.R. 39-42; D.E. 10-12 at 44-47).  The DNA profiles taken

from blood on the curb and sidewalk in front of the house where the shooting occurred,

from the Lincoln Continental, from the gun found in the trash can, from the baseball cap

and from the bandana were consistent with the DNA profile taken from a swab of the

inside of petitioner's cheek (4 R.R. 23-24; D.E. 10-12 at 23-24).  The forensic scientist

testified that to a reasonable degree of scientific certainty, the blood belonged to

petitioner (4 R.R. 24; D.E. 10-12 at 29).  In addition, petitioner's fingerprints were found

on the exterior surface of the passenger side of the Lincoln Continental windshield (4

R.R. 29; D.E. 10-12 at 34).  On February 5, 2009 a detective working on the case met

with petitioner and the detective noted that petitioner had an injury to his right arm (4

R.R. 157-158; D.E. 10-13 at 50-51).

Petitioner was indicted on one count of aggravated robbery (I C.R. 3; D.E. 10-7 at

6).[3]  The jury found petitioner guilty of the lesser included offense of aggravated assault

with a deadly weapon (I Supp. C.R. 16; D.E. 10-6 at 18).  Petitioner filed a direct appeal

and on April 14, 2011 the Thirteenth Court of Appeals affirmed his conviction.  Garcia v.

State, No. 13-09-00555-CR, 2011 WL 1442341 (Tex. App.-- Corpus Christi April 14,

2011, no. pet.)(D.E. 10-2 at 1-15).

Petitioner did not file a petition for discretionary review ("PDR") with the Texas

Court of Criminal Appeals in a timely fashion.  However, he later sought permission to

file an out-of-time PDR, arguing that his appellate attorney had failed to inform him that

---

[3]"C.R." refers to the Clerk's Record prepared in this case.

his conviction had been affirmed and that he had the right to file a *pro se* PDR until after the time for doing so had expired.  Ex Parte Garcia, WR-77,221-01, Event Date: 02/21/2012 at 7, 15-19 (D.E. 10-17 at 11, 19-23).  The Texas Court of Criminal Appeals found that petitioner's counsel did fail to advise petitioner of his right to file a *pro se* PDR.  The court nevertheless declined to allow petitioner to file an out-of-time PDR because on May 10, 2011, petitioner had filed a *pro se* motion for extension of time to file a PDR and had been granted the extension, but had never filed the PDR (Order in Ex Parte Garcia, WR-77,221-01, Event Date: 03/07/2012 (D.E. 10-18 at 2-4).

Petitioner filed an application for habeas corpus relief in state court on May 14, 2012, in which he argued the following: (1) The evidence was legally insufficient to prove guilt beyond a reasonable doubt; (2) The trial court erred in allowing a prejudicial photo to be admitted into evidence; (3) Petitioner's right to a fair and impartial jury was violated when hostile jurors were allowed to serve on the jury; (4) The charge of the court was manifestly improper and (5) Petitioner's trial counsel was ineffective when he (a) failed to have either a forensic scientist or fingerprint expert present to counter the testimony of the forensic scientist and fingerprint experts presented by the prosecution and (b) failed to file a motion for new trial based on the argument for mistrial.  Ex Parte Garcia, WR-77,221-02 at 7-11 (D.E. 10-21 at 11-15).  The state habeas court adopted the findings of fact and conclusions of law proposed by the State and on July 18, 2012 the Texas Court of Criminal Appeals denied the application on findings of the trial court without a hearing.  Id. at "Action Taken" page (D.E. 10-21 at 2).  In particular, the state

habeas court made a finding that petitioner's claims based on sufficiency of the evidence, admission of the photograph, juror bias and charge error were litigated on direct appeal and thus were not cognizable on habeas review.

Petitioner filed this federal habeas petition on August 1, 2012 and makes the following arguments: (1) The evidence was insufficient to support his conviction; (2) The trial court violated his right to due process when it allowed a prejudicial photo to be admitted into evidence; (3) He was denied his right to a fair and impartial jury; (4) The jury charge was manifestly improper and (5) His attorney rendered ineffective assistance of counsel at trial.

In his motion for summary judgment, respondent argues that because the state habeas court found that petitioner's first four arguments had been litigated in the direct appeal, the claims are unexhausted and procedurally barred.  Respondent asserts in the alternative that the unexhausted claims are without merit.  Respondent further contends that petitioner's attorney provided effective assistance of counsel.  Petitioner counters that his claims are exhausted and not procedurally barred and that he is entitled to the relief he seeks.

## APPLICABLE LAW

### A.  Exhaustion and Procedural Bar

Under the applicable federal habeas corpus statutes, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies

available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  Thus, a petitioner "must

exhaust all available state remedies before he may obtain federal habeas corpus relief."

Sones v. Hargett, 61 F.3d 410, 414 (5th Cir.1995).  The exhaustion requirement "is not

jurisdictional, but reflects the policy of federal-state comity, which is designed to give

state courts the initial opportunity to consider and correct alleged violations of their

prisoners' federal rights." Morris v. Dretke, 413 F.3d 484, 490-91 (5th Cir. 2005)(citing

Anderson v. Johnson, 338 F.3d 382, 386 (5th Cir. 2003)).  Exceptions exist only where

there is an absence of available State corrective process or circumstances exist that render

such process ineffective to protect the rights of the applicant.  See 28 U.S.C. §

2254(b)(1)(B).

When a petitioner has defaulted his federal claims in state court by failing to

follow applicable state procedural rules, the claims may not be reviewed in federal court

unless the petitioner demonstrates cause for the default and actual prejudice as a result of

the alleged error.  Sawyer v. Whitley, 505 U.S. 333, 338, 112 S.Ct. 2514, 120 L.Ed.2d

269 (1992).  To show cause, a petitioner must establish that some objective factor

external to the defense impeded his efforts to comply with the state procedural rule.

Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986).  To

show actual prejudice, a petitioner must demonstrate that but for the error, he might not

have been convicted.  Pickney v. Cain, 337 F.3d 542, 545 (5th Cir. 2003)(citing United

States v. Guerra, 94 F.3d 989, 994 (5th Cir. 1996)).  In addition, if a petitioner fails to

exhaust state court remedies and the court to which the petitioner would be required to

present his claims in order to meet the exhaustion requirement would find the claims

procedurally barred, there is a procedural default for purposes of federal habeas.

Coleman v. Thompson, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640

(1991).

      In this case the state habeas trial court entered a finding that petitioner's claims

based on sufficiency of the evidence, admission of the photograph, juror bias and charge

error were litigated on direct appeal and thus were not cognizable on habeas review.  The

Texas Court of Criminal Appeals denied petitioner's application without written order on

the findings of the trial court.  Respondent argues that because petitioner never presented

his claims to the Texas Court of Criminal Appeals via a PDR and because the state habeas

court found that the claims were not cognizable on habeas review, that the claims were

never properly presented to the Texas Court of Criminal Appeals and are unexhausted

and procedurally barred.

      Respondent cites no case law in support of his contention and none was found.

While it is true that a state habeas petitioner must present his claims in a procedurally

correct manner, it is not clear that the fact that the state habeas court found them to not be

cognizable on habeas review means that the claims were not presented in a procedurally

correct manner.[4]  "Section 2254(c) requires only that state prisoners give state courts a

---

[4]Indeed, the rule regarding prior adjudication of claims on appeal is not as simple as either the state habeas court or respondent describe it.  "Although habeas corpus is traditionally unavailable to review matters which were raised and rejected on appeal, claims involving jurisdictional defects or invoking fundamental constitutional rights may be raised collaterally."  Ex Parte Schuessler, 846 S.W.2d 850, 852, n. 6 (Tex. Crim. App. 1993)(en

*fair* opportunity to act on their claims." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999)(emphasis in original).  "The purpose of exhaustion is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. 1, 10, 112 S.Ct. 1715, 1720, 118 L.Ed.2d 318 (1992)(superseded by statute on other grounds).  The Court in <u>O'Sullivan</u> concluded that state prisoners exhausted their claims when they gave the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.  <u>O'Sullivan</u>, 526 U.S. at 845, 119 S.Ct. at 1732.  Petitioner attempted to give the Texas Court of Criminal Appeals an opportunity to resolve the constitutional issues in his case via his habeas corpus petition.  Accordingly, it is recommended that his claims not be dismissed as unexhausted.

## B.  Merits

### 1.  Standard of Review

Under the AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

---

banc).  Petitioner couched his claims to the state habeas court in constitutional terms.  <u>See Ex Parte Garcia</u>, WR-77,221-02, Event Date: 06/22/2012 at 7-11, 26-80 (D.E. 10-21 at 11-15, 30-84).  While the claims may or may not have implicated his constitutional rights, it is not clear that they were subject to the summary dismissal recommended by the state habeas court.

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  Williams v. Taylor, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d (2000).  Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law.  Neal v. Puckett, 239 F.3d 683, 687 (5th Cir. 2001)(citing Williams, 120 S.Ct. at 1522-1523).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)(quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).  A

federal habeas court must determine what theories or arguments supported, or could have supported, the state court's decision.  Then it must ask whether it is possible that fair-minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  <u>Harrington</u>, 131 S.Ct. at 786.  Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.  <u>Id.</u> (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)).

The standard is very difficult to meet.  "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court litigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther."  <u>Id.</u>  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  <u>Id.</u> at 786-787.  In addition, if a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision.  <u>Bledsue v. Johnson</u>, 188 F.3d 250, 256 (5th Cir. 1999).

A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence.  <u>Garcia v. Quarterman</u>, 454 F.3d 441, 444 (5th Cir. 2006)(citations omitted).  This deference

extends not only to express findings of fact, but to the implicit findings of the state court. Id.  In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  Richter, 131 S.Ct. at 784.

### 2.  Sufficiency of the Evidence

Petitioner argues that the evidence in his case was insufficient to support the finding that he was guilty of aggravated assault.  When reviewing an application for habeas corpus relief based on a claim of insufficient evidence, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).  The crux of petitioner's claim is that the evidence was insufficient to identify him as one of the intruders at Rodriguez's house because none of the witnesses was able to identify him.

The Thirteenth Court of Appeals cited Jackson and noted that in order to prove aggravated assault under section 22.02 of the Texas Penal Code, as alleged in the indictment, the prosecution had to show that petitioner, acting either alone or as a party, intentionally or knowingly, threatened or placed Rodriguez in fear of imminent bodily injury or death and used or exhibited a firearm during the assault.  The court then found that evidence supporting the conviction included the DNA evidence that identified the blood found in front of and around the house and on objects close to the house as

12

belonging to petitioner, as well as petitioner's fingerprints found on the automobile parked close to the house.  In addition, the court noted that Rodriguez testified that when one of his assailants had him in a choke hold that he shot his gun over his shoulder and two weeks after the incident petitioner's right arm was bandaged and in a sling.  The state appellate court concluded that when the evidence was viewed in the light most favorable to the verdict, it was legally sufficient to find the appellant guilty of aggravated assault beyond a reasonable doubt.  Garcia, 2011 WL 1442341 at *2-3 (D.E. 10-2 at 5-7).

Petitioner has not shown that application of the Jackson standard was objectively unreasonable under AEDPA.  He argues only that there were no eyewitnesses who identified him and also that because he was indicted for aggravated robbery, the jury was not free to find him guilty of aggravated assault.  A rational trier of fact could conclude, based on the DNA, finger print and injury evidence, that petitioner was part of the trio that attacked Rodriguez.  In addition, the evidence supported the conviction for the lesser included offense of aggravated assault.  See Tex. Penal Code Ann. § 22.02.  Accordingly, it is recommended that summary judgment be entered for respondent on petitioner's sufficiency of the evidence claim.

### 3.  Introduction of Prejudicial Photograph

Petitioner argues that his right to due process was violated when the court allowed a picture of the deceased assailant's hand to be admitted into evidence.  The prosecutor moved to admit a photograph of the latex-gloved hand of the intruder who died at the scene.  He argued that the photo showed that the assailants wore latex gloves because

they intended to rob Rodriguez and did not want to leave any fingerprints at the scene (2 S.F. 15; D.E. 10-9 at 19).  Petitioner's attorney argued that there was no indication that petitioner had been wearing gloves at the scene.  The court overruled the objection and allowed the photo to be admitted (2 S.F. 15-16; D.E. 10-19 at 19-20).  The Thirteenth Court of Appeals determined that the photograph was relevant and that its probative value was not substantially outweighed by its possible prejudicial effect.

Petitioner argues that the trial judge abused her discretion when she admitted the photo because it was irrelevant and overly prejudicial and violated his right to a fair and impartial trial.  He cites Dawson v. Delaware, 503 U.S. 159, 179, 112 S.Ct. 1093, 117 L.Ed.2d 23 (1993) for its comment that "when a state court admits evidence that is 'so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.'" Id. (quoting Tennessee v. Bane, 510 U.S. 808, 114 S.Ct. 52, 126 L.Ed.2d 23 (1993)).

Petitioner has not shown that the evidence caused the trial to be fundamentally unfair.  The prosecutor moved to introduce the photo to show that the intruders intended to rob Rodriguez, but the jury did not infer from the photo that petitioner intended to rob him.  Rather, it convicted him of assault instead of robbery.  Given the finding of the jury, the petitioner cannot show that the introduction of the photo rendered the trial fundamentally unfair.  Accordingly, he cannot show that fairminded jurists could disagree on the correctness of the Thirteenth Court of Appeals' opinion on this issue.  Summary judgment should be entered for respondent on this claim.

### 4. Right to a Fair and Impartial Jury

Petitioner asserts that his right to a fair and impartial jury was violated when jurors became hostile after the trial was suspended for several days and then resumed, due to petitioner being hospitalized.  On the day the trial was reconvened, petitioner's attorney told the court that one of the jurors had glared at him and at the court.  The juror made a comment to the person sitting next to her and had a mean look on her face (4 R.R. 7; D.E. 10-12 at 12).  The court called the juror in and she and the court had the following conversation:

> THE COURT: [I]t has come to the Court's attention that perhaps we do recognize that you do have to be elsewhere, as I think all the other jurors here today.  We appreciate you coming back.  Is there going to be a concern about your fairness in this --
>
> JUROR: I will be fair, but I'm extremely angry.  I feel like a prisoner.  I feel like my rights have been taken away.  And I think what you guys have done to all of us jurors, to hold us over for a week is totally unconscionable.  And I'll be very honest with you, I don't appreciate it.  I -- I think I -- it's just a total lack of respect for all 12 of us.
>
> THE COURT: Okay.  Now we appreciate your concern.  I appreciate if you keep those concerns to yourself, if you have not already expressed it to them.
>
> JUROR: I'm not the only one that feels that way, ma'am.
>
> THE COURT: Okay.
>
> JUROR: We've all really -- we've all expressed our opinions to ourselves.

(4 R.R. 7-9; D.E. 10-12 at 12-14).  At that point the court called all the jurors in and asked each one individually if he or she could be fair and all responded affirmatively (4 R.R. 10-13; D.E. 10-12 at 15-18).  The court did not reveal to the jury that petitioner was the

person who had been in the hospital.  Petitioner's counsel moved for a mistrial but his motion was denied (4 R.R. 14-15; D.E. 10-12 at 19-20).

Petitioner argues that because the jury was hostile to the proceedings, he was denied his Sixth Amendment right to trial by an impartial jury and his Fourteenth Amendment rights to due process and equal protection. The Thirteenth Court of Appeals found that because the court questioned the complaining juror as well as the other jurors individually and obtained assurances that each could be fair, the trial court did not abuse its discretion in denying the mistrial.

Although petitioner cites Supreme Court cases which hold, in general terms, that parties are entitled to impartial and disinterested juries, he does not show that the state court unreasonably applied the principle to the facts of his case.  While the jurors most likely felt inconvenienced by the delay in the trial, the court secured assurances from them  that they would be fair to each side.  Given those assurances, petitioner cannot show that fairminded jurists would disagree on the correctness of the Thirteenth Court of Appeals' decision.  Therefore, it is recommended that summary judgment be entered for respondent on this issue.

### 5. Jury Charge

Petitioner argues that the jury charge in his case was flawed to such an extent that his right to due process was violated.  As a general rule, jury instructions do not form a basis for habeas corpus relief.  Williams v. Lockhart, 736 F.2d 1264, 1267 (5th Cir. 1984).  "Habeas relief is available when a petitioner establishes that improper instructions

resulted in a 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" Id. (citing Brouilette v. Wood, 636 F.2d 215, 218 (8th Cir. 1980) and DeBerry v. Wolff, 513 F.2d 1336, 1338-39 (8th Cir. 1975) and quoting Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)).  "The burden of demonstrating that errors in jury instructions were sufficiently prejudicial to 'support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish a plain error on direct appeal.'" Id. (quoting Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977)).  A petitioner must show that the alleged error so infected the entire trial that he was deprived of his right to due process.  Id. (citing Cupp v. Naughton, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)).

In petitioner's case, shortly after the jury reached a verdict and was dismissed, it was discovered that although the charge asked the jury to consider whether petitioner was guilty of aggravated robbery or the lesser included offense of aggravated assault, the elements were identical for each offense.  The relevant language in both said that the jury should find petitioner guilty if the evidence showed that he "did then and there while in the course of committing theft of property and with the intent to obtain and maintain control over the property, intentionally or knowingly threaten or place Daryl Rodriguez in fear of imminent bodily injury or death[.]"  Ex Parte Garcia, WR-77,221-02, Event Date: 06/22/2012 at 161-162 (D.E. 10-22 at 68-69).  Had the charge been drafted correctly, the

elements of aggravated assault would not have included "while in the course of committing theft of property."  Petitioner's attorney moved for a mistrial based on the error in the charge and the trial court denied it.

The Thirteenth Court of Appeals found that the charge did contain an error, but that petitioner could not show that he was harmed by the inclusion of the additional element because the only effect it had was to require the State to prove an additional element.  Petitioner asserts that having the extra element in the charge violated his rights to due process and also to be free of double jeopardy.  He cites in support Victor v. Nebraska, 511 U.S. 1, 6, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994), but it is inapposite as it addresses the definition of "reasonable doubt" in a jury charge.  Petitioner also cites the dissent in Blakely v. Washington, 542 U.S. 296, 321, 124 S.Ct. 2531, 2546-2547, 159 L.Ed.2d 403 (2004), but it does not address the issue he raises.

Petitioner has not shown that fairminded jurists could disagree on the correctness of the state court's decision that he was not harmed by the error in the charge.  Therefore, he has not met his burden under AEDPA of showing this determination was unreasonable.

Petitioner also argues that he could not be found guilty of aggravated assault because he was not charged with that offense.  However, under the facts of this case, aggravated assault is a lesser included offense of aggravated robbery because it is established by proof of the same or less than all of the facts required to establish the commission of the offense charged.  Garfias v. State, 381 S.W.3d 626, 631 (Tex.

App.–Fort Worth 2012, no pet.)(citing Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006)).  Petitioner's argument that inclusion of the lesser included offense of aggravated assault in the jury charge violated his Constitutional rights is without merit.

Finally, petitioner argues that the jury charge should have contained the lesser included offense of robbery because it is clear that the jury found that the prosecution failed to prove at least one of the aggravating elements of aggravated robbery.  However, there is no indication in the record that petitioner's attorney sought to add robbery as a lesser included offense in the charge and a court does not have a duty to *sua sponte* instruct the jury on unrequested defensive issues.  Posey v. State, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998).  Nor has petitioner shown that the omitted instruction so infected the trial that he was deprived of due process.  The evidence in the case showed that three intruders assaulted three residents of a home at gunpoint.  The only issue was whether petitioner was one of the intruders and the jury determined that he was.  Nothing in the record indicates that the jury would have convicted petitioner of robbery rather than aggravated assault had that choice been included in the jury charge.  Summary judgment should be entered for respondent on this issue.

**6. Ineffective Assistance of Counsel Claim**

Petitioner argues that his counsel was ineffective for (1) failing to investigate the possibility that the DNA evidence was contaminated or that there were unaccounted breaks in the chain of custody; (2) failing to investigate the "extreme likelihood" that the DNA evidence was inconclusive; (3) failing to properly challenge the introduction of the

19

DNA and fingerprint evidence at trial.  The state habeas court found that petitioner's counsel provided effective assistance.

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable.  Id., 466 U.S. at 687-88, 104 S.Ct. at 2064.  Petitioner must show "significant prejudice" in a noncapital context.  Armstead v. Scott, 37 F.3d 202 (5th Cir. 1994)(citing Spriggs v. Collins, 993 F.2d 85, 88, n. 4 (5th Cir. 1993)).

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.  A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  Id., 466 U.S. at 690, 104 S.Ct. at 2066.

An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve.

> Strickland, 466 U.S. at 689-690, 104 S.Ct. 2052. . . . Unlike a later reviewing
> court, the attorney observed the relevant proceedings, knew of materials outside
> the record, and interacted with the client, with opposing counsel, and with the
> judge.  It is "all too tempting" to "second-guess counsel's assistance after
> conviction or adverse sentence."  Id., at 689, 104 S.Ct. 2052; . . . The question is
> whether an attorney's representation amounted to incompetence under "prevailing
> professional norms," not whether it deviated from best practices or most common
> custom.  Strickland, 466 U.S. at 690, 104 S.Ct. 2052.

Harrington, 131 S.Ct. at 788.  In addition, federal habeas courts must guard against the

danger of equating unreasonableness under Strickland with unreasonableness under §

2254(d).  "When § 2254 (d) applies, the question is not whether counsel's actions were

reasonable.  The question is whether there is any reasonable argument that counsel

satisfied Strickland's deferential standard."  Id.

All three of plaintiff's ineffective assistance of counsel allegations are based on his

assertions that the DNA and fingerprint evidence in his case was contaminated or

otherwise flawed.  Petitioner argues that his attorney should have sought further testing of

the DNA evidence in his case and should have challenged the chain of custody.  "A

defendant who alleges a failure to investigate on the part of his counsel must allege with

specificity what the investigation would have revealed and how it would have altered the

outcome of the trial."  United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989).

Petitioner has failed to show what further testing of either the blood or fingerprint

evidence would have revealed and has presented no evidence that the blood samples were

tampered with or contaminated in any way.  His conclusory allegations, without more, are

insufficient to raise a constitutional issue.  Koch v. Puckett, 907 F.2d 524, 530 (5th Cir.

1990)(citing Ross v. Estelle, 694 F.2d 1008, 1011-12 and n. 2 (5th Cir. 1983)).

Accordingly, petitioner cannot overcome the presumption of correctness afforded the factual and legal conclusions of the state habeas court.  Therefore, it is recommended that summary judgment be entered on his ineffective assistance of counsel claims.

## C.  Evidentiary Hearing

Petitioner argues that he is entitled to an evidentiary hearing on his federal habeas claim.  The habeas corpus statute provides the following in regards to evidentiary hearings:

> If an applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) The facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

The Supreme Court has held that habeas review is confined to the record that was before the state court and noted that 28 U.S.C. § 2254(e)(2) focuses on limiting the discretion of federal district courts in holding hearings.  Cullen v. Pinholster, ___ U.S. ___, 131 S.Ct. 1388, 1398, 1401 n. 8, 179 L.Ed.2d 557 (2011).  Prior to Pinholster, the rule in the Fifth Circuit was that a federal court should hold an evidentiary hearing if the petitioner could show that (1) the state did not provide him with a full and fair hearing

and (2) the allegations in his petition, if proven true, would entitle him to relief. Blue v. Thaler, 665 F.3d 647, 655 (5th Cir. 2011). Pinholster imposed a new limitation with its determination that a federal court cannot consider evidence that was not part of the state court record. Blue, 665 F.3d at 647.

Petitioner seeks an evidentiary hearing to develop the unresolved material facts of the case. However, he has neither met the requirements of 28 U.S.C. § 2254(e)(2) nor shown how the federal habeas court could, in light of Pinholster, consider any new facts presented. Accordingly, his request for an evidentiary hearing should be denied.

## D.  Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under

§ 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed or denied on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his claims be denied on the merits. Reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. If the district court orders that petitioner's habeas petition be denied and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance of a COA.

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that respondent's motion for summary judgment on the merits (D.E. 13) be granted and petitioner's application for habeas corpus relief be denied with prejudice.  It is also recommended that petitioner's request for an evidentiary hearing (D.E. 15) be denied.  It is further recommended that a Certificate of Appealability be denied.

Respectfully submitted this 10th day of January, 2013.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996)(en banc).